**STATE of North Dakota, Respondent,**

**v.**

**Clarence ROHRICH, Defendant and Appellant.**

**No. Cr. 318.**

Supreme Court of North Dakota.

May 13, 1965.

Lanier, Knox & Shermoen, Fargo, (F. C. Rohrich, Linton of Counsel), for appellant.

Albert A. Wolf, State's Atty., Bismarck, for respondent.

BURKE, Chief Justice.

Appellant-defendant in this case was convicted of the crime of perjury in the District Court of Burleigh County. He has appealed from the judgment of conviction. The charge of perjury arose out of defendant's testimony in a case wherein he was charged in police magistrate's court with driving a motor vehicle at a speed of thirty-five miles an hour in a zone in which the speed limit was twenty-five miles an hour. At the trial in police magistrate's court, the police officer, who made the speeding charges, testified that he clocked the defendant at a speed of thirty-five miles an hour while defendant was traveling east on Main Avenue from Sixth Street to Eighth Street; that at the intersection of Eighth Street and Main Avenue, defendant turned north into Eighth Street which at this point is a dead end street which ends half a block north of Main Avenue; that defendant stopped at the dead end and he (the officer) served the defendant with a summons for traffic violation at this location.

At Ninth Street and Main Avenue, one block east of the corner where the police officer said the defendant turned north, the speed limit changes to thirty-five miles an hour for the zone east of Ninth Street. Defendant testified that he did not turn north at Eighth Street and Main Avenue as testified to by the officer but that he turned north at a point on Main Street about two blocks east of Ninth Street, and it was in this location that the traffic summons was served. The defense to the traffic charge was that if the speed of defendant's car had been clocked at thirty-five miles an hour in the two blocks immediately west of the place where the defendant turned to the north, there was no violation because those two blocks were in a zone where the speed limit was thirty-five miles an hour.

After the trial upon the charge of speeding defendant was charged with perjury. In the information it was alleged: "* * * that * * * said defendant did then and there wilfully and unlawfully and having taken an oath before a competent person, namely David L. Milhollan, Police Magistrate of the City of Bismarck, that he would testify truthfully in a trial before said magistrate, did make a false statement which he did not believe to be true, and which statement was material to the issues in said trial." Defendant pleaded "not guilty" to this information.

At the trial upon the charge of perjury, the substance of defendant's testimony in police magistrate's court was testified to by the assistant city attorney who prosecuted that case and by the police magistrate. The police officer who had made the speeding charge testified that, contrary to defendant's testimony, defendant's speed had been clocked and the traffic summons had been served in a twenty-five mile an hour speed zone. With respect to the place of the service of the summons he was corroborated by two witnesses who stated that they saw the officer stop the defendant's car. None of this testimony was contradicted at the perjury trial.

Upon this appeal there are fifteen specifications of error. We shall consider first those which relate to the sufficiency of the evidence to sustain the verdict. Counsel for defendant urges that the evidence is insufficient because,

(1), the alleged false statements of the defendant were not material to the issues in the trial of the speeding charge in police magistrate's court;

(2), the witnesses at the perjury trial did not testify as to the substance of defendant's testimony in police magistrate's court but only as to its effect; and

(3), that the memories of the witnesses as to defendant's testimony in police magistrate's court were not sufficiently accurate to be a basis for a prosecution for perjury.

None of these objections to the sufficiency of the evidence can be sustained. The main issue in the trial in police magistrate's court was whether the defendant had exceeded the speed limit. Testimony as to the location where defendant's rate of speed was timed was material to establish that defendant had violated the speed limit at that place. At the trial in police magistrate's court the police officer testified that he had timed the defendant's speed at thirty-five miles an hour for a distance of two blocks immediately west of the point where he stopped the defendant and that all of the incidents to which he testified took place west of Ninth Street in a twenty-five mile an hour speed zone. Defendant testified that he had been stopped two blocks east of the beginning of the thirty-five mile an hour speed zone. This testimony was material for two reasons; first, it challenged the credibility of the officer's entire testimony, and second, if the officer's testimony, that he timed the defendant's speed at thirty-five miles an hour in the two blocks immediately west of the location where defendant was stopped, and defendant's testimony as to the place where he was stopped was accepted as true, there was no offense because the speed limit was thirty-five miles an hour in that area. A statement made by a witness during the course of a trial is material " * * * if it has a legitimate tendency to prove or disprove some fact that is material, irrespective of the main fact at issue." 41 Am.Jur. (Perjury, Sec. 13) 10. "The test of materiality is whether a false statement can influence the tribunal * * *" in arriving at a decision. 70 C.J.S. Perjury § 11, p. 466.

It is clear that the false statements defendant was alleged to have made at his trial in police magistrate's court were statements of the facts upon which his defense to the charge of speeding was predicated. They were clearly material.

The question of whether the state's witnesses testified to the substance of defendant's testimony in police magistrate's court or to its effect is largely a question of semantics. How a witness may characterize his own testimony is unimportant. What is important, is his testimony as to the facts. The witness Saefke testified as follows:

"Q. Do you remember with certainty what questions were asked of him by his counsel and the answers to them?

"A. Not verbatim.

"Q. Do you recall the substance of those questions and the answers given?

"A. Yes, Sir.

"Q. Would you relate to the jury what the defendant's testimony was as elicited by counsel there at that hearing insofar as it relates to the place of the arrest?

"A. The place of his arrest in his testimony was that he had turned north from Main Avenue at the * * * east of Phillip's 66 Station which was across the street from Simonson's Gas."

Concerning the defendant's testimony at the prior trial the Police Magistrate testified: "He did specifically recall then (sic) making a left-hand turn approximately two blocks past the intersection of Ninth and Main. He stated that he recalled making the left turn, and after making the turn the Phillip's 66 Station was on his left, and Simonson's Cut Rate Station was across the street on the south side of Main Avenue."

In the above testimony the witnesses were not testifying as to their conclusions as to what the effect of defendant's statements were. They were testifying as to what those statements were. Such statements "may be proved by anyone who heard them." 70 C.J.S. Perjury § 58, p. 529.

The last objection as to the sufficiency of the evidence relates to the uncertainty of some of the witnesses when they were cross-examined as to the whole of the defendant's testimony at the former trial. This argument is one which goes to the

weight that is to be given to the recollections of the witnesses which they stated were certain. That was a question for the jury. The credibility of witnesses and the weight to be given to their testimony are matters for the jury. State v. McCray (N.D.) 99 N.W.2d 321; State v. Holte, N.D., 87 N.W.2d 47; State v. Gulke, 76 N.D. 653, 38 N.W.2d 722.

Specifications of error, 3, 4, 5 and 6 relate to the claimed misconduct of the state's attorney in attempting to get alleged prejudicial immaterial evidence into the record.

A witness, Father Samuel Homsey, who had been called as a character witness, had testified that defendant had a good reputation for truth and veracity. Upon cross-examination the state's attorney inquired if the witness had based his opinion upon his acquaintance with the defendant in his church. The witness answered that he had based his opinion upon his acquaintance with the defendant and with his family. He stated that the defendant had two sisters who were Nuns and that he was better acquainted with the defendant's family than he was with many other families in his parish. Then followed inquiries as to other members of defendant's family and finally the state's attorney asked: "Are you aware that defendant's brother was convicted * * *?" At this point defendant's attorney objected and moved for a mistrial. The objection was sustained but the motion for a mistrial was denied. Thereupon the witness volunteered the following: "Yes, I know of this and I know the circumstances regarding all this because I went through * * * I think I was closer to it than you were, but after that, what happened here, you probably know more about it than I do, but I know it was going through there." The state's attorney then asked, "What is it that you are referring to?" Again, defendant's attorney objected and moved for a mistrial. At this point the trial judge directed: "We will get off this subject altogether."

The purpose of the cross-examination was evidently to show that the witness had in fact testified as to his personal opinion of the character of the defendant not to his general reputation in the community where he lived. When the witness volunteered the information that he based his opinion in part upon his acquaintance with defendant's family and stated that defendant had two sisters who were Nuns, the state's attorney attempted to show that there was one member of defendant's family whose conduct had not been so exemplary. The result of the incident was that, despite the fact that the objection to the question of the state's attorney was sustained, the jury was informed that defendant's brother had been convicted of some offense. What the offense was, was not disclosed. Inquiry as to the brother's conviction was not material to the defendant's reputation nor was it material to test the witness's knowledge of that reputation. State v. Keul, 233 Iowa 852, 5 N.W.2d 849. Since a new trial must be granted upon other grounds we do not decide whether this incident was prejudicial.

Error is also predicated upon the fact that the state's attorney called a Kenneth Kucera as a witness in the case. Before this proposed witness took the stand, the Judge, the attorneys and the defendant, at the request of defendant's attorney, retired to chambers where the state's attorney made an offer of proof in the absence of the jury. Defendant's objection to the offer of proof was sustained and that was the end of the matter. Concerning this specification it is sufficient to say that the record shows no error.

During most of the trial the defendant was absent from conferences and arguments between the attorneys and the trial judge concerning legal questions. These conferences took place, out of the presence of the jury, in the judge's chambers. With respect to this matter the record shows the following: "The Court: I think the record should show this is the first time in any of

these conferences on offers of proof etc., that defendants have been present, and I wonder if counsel for defendants would be willing to agree that this would not constitute any error on the part of the trial?

"Mr. Lanier: I will waive, your Honor. However, I question my right to do so, but I do waive for any effectiveness it does." A specific waiver was also made for the record by the defendant, Rohrich, personally.

■ Counsel for defendant specified that the absence of defendant from these conferences was error and in his brief he states: "The only question raised by this specification of error is whether or not the voluntary waiving by both counsel and defendants cures the error." If the absence of the defendant from these conferences constituted error, a question which we do not decide, the error was clearly waived. Constitutional and statutory provisions which require the presence of an accused at a trial for a felony are for the benefit of the accused and may be waived. State v. Thompson, 56 N.D. 716, 219 N.W. 218. See also State v. Hefta (N.D.) 88 N.W.2d 626; State v. Throndson, 49 N.D. 348, 191 N.W. 628.

■ The last specification of error relates to the view by the jury of the scene of defendant's arrest. Counsel for appellant argues in his brief and orally that it was reversible error for the view by the jury to be had without the presence of the defendant and the trial judge. Section 29–21–26, NDCC, provides:

"When, in the opinion of the court, it is proper that the jurors should view the place in which the offense was charged to have been committed, or in which any other material fact occurred, it may order the jurors conducted in a body, in the custody of proper officers, to such place, which must be shown to them by a person appointed by the court for that purpose, and the officers must be sworn to suffer no person to speak to nor communicate with the jurors, nor to do so themselves on any subject connected with the trial, and return them into court without unnecessary delay, or at a specified time. The trial judge shall be present and the state's attorney and counsel for the defendant may be present at the view by the jurors."

By the clear language of the above statute it was the mandatory duty of the trial judge to attend the viewing by the jury. His absence was error and it will be deemed prejudicial. The absence of the trial judge was not assigned as error in the specifications of error upon this appeal and, for that reason it is urged that the argument that such absence was error may not be considered on this appeal. This contention would be valid if this were a civil case. However, neither the statutes nor the rules applicable to appeals in criminal cases contain any reference to specifications of error.

An assignment of error in the appellant's brief is sufficient in criminal cases. State v. Weltner, 7 N.D. 522, 75 N.W. 779.

The judgment of the district court is reversed and a new trial granted.

ERICKSTAD, STRUTZ and TEIGEN, JJ., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.