STATE OF NORTH DAKOTA, Respondent, v. E. A. THOMPSON, Appellant.

(219 N. W. 218.)

**Criminal law — rendition of verdict.**
    1. The trial of a criminal case includes the rendition of the verdict.

**Criminal law — constitutional and statutory provisions for defendant's benefit.**
    2. The constitutional provisions set forth in § 13 of article 1 of the Con-

---

Note.—(3) On right of accused to waive his presence at time of receiving verdict upon trial for felony, see annotation in 14 L.R.A.(N.S.) 603; 32 L.R.A.(N.S.) 306; 8 R. C. L. 93; 2 R. C. L. Supp. 545; 4 R. C. L. Supp. 520.

(4) As to necessity of presence of accused when sentence is imposed, see 8 R. C. L. 234; 2 R. C. L. Supp. 579.

stitution of this state, to wit: "In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; . . . and to appear and defend in person and with counsel," is a provision for the benefit of the defendant as is also this provision of § 10,771 of the Code: "If the . . . indictment is for a felony, the defendant must be personally present at the trial," and this provision of § 10,877: "If the . . . indictment is for a felony, the defendant must, before the verdict is received, appear in person. . . ."

**Criminal law — defendant absenting himself from trial waives rights.**

3. Where a defendant, charged with and on trial for a felony, admitted to, and at liberty on bail, voluntarily absents himself from the trial he waives his right to be present at the rendition of the verdict.

**Criminal law — defendant voluntarily absent from trial — duty of court to locate him when verdict is returned.**

4. Where such defendant voluntarily absents himself from a trial the court should make reasonable exertions to find him to give him an opportunity to be present when the verdict is returned, but no defendant can be permitted by voluntary absence to impede the progress of a trial. In the case at bar the record is examined and it is *held*, that the trial court did all that could reasonably be expected to protect the defendant and his rights; that the defendant by his voluntary absence waived his right to be present when the verdict was rendered and that the verdict so rendered must stand.

**Criminal law — claim that defendant's counsel was intoxicated at time of trial must be substantiated — trial court will protect defendant's rights.**

5. Where the defendant in a criminal case on a motion for new trial and on appeal, contends that his counsel did not properly represent him and because of intoxication was unable to safeguard defendant's rights the appellant must show to the court that such contention is substantially correct. The record examined and it is held that there is nothing to indicate that such was counsel's condition, that the case was improperly tried, or that the defendant's rights were neglected. This court assumes, in the absence of a showing to the contrary, that the trial court would not permit any injury to the defendant's rights through the intoxication of his counsel, or through neglect of duty.

**Evidence sustains verdict.**

6. The evidence is examined and is found sufficient to sustain the verdict.

Opinion filed April 21, 1928.

Criminal Law, 16 C. J. § 794 p. 439 n. 5; § 2070 p. 816 n. 63; § 2071 p. 817 n. 73; § 2642 p. 1145 n. 50; § 2744 p. 1227 n. 25; 17 C. J. § 3561 p. 217 n. 61. Larceny, 36 C. J. § 483 p. 899 n. 34.

Appeal from the District Court of Mountrail County, North Dakota, *Lowe, J.*

Affirmed.

*R. E. Swendseid,* for appellant.

"It appears, however, that the majority rule is that the unconstitutional provision, and the general statutory provision embodied in § 10,771, can be waived by the defendant by being voluntarily absent." Diaz v. United States, 223 U. S. 442, Ann. Cas. 1913C, 1138.

"The same principles apply as in civil cases in granting a new trial for accident or surprise; and where, notwithstanding the exercise of due diligence, defendant is prevented through surprise from having a fair trial, a new trial will be granted him. And where it appears that the jury did not have the real cases before them, but acted on an erroneous assumption as to the facts, which may have been material, a new trial should be granted." 16 C. J. 1126.

"It is essential, therefore, that the circumstances taken as a whole, and giving them their reasonable and just weight, and no more, should to a moral certainty exclude every other hypothesis." Com. v. Webster, 5 Cush. 295, 52 Am. Dec. 711.

*George F. Shafer,* Attorney General, and *C. N. Cottingham,* State's Attorney, for respondent.

"Most of the courts, however, have held that the defendant may waive his right to be present when the case is not capital; that he does so if, having been released on bail, or absconded or is voluntarily absent after the arraignment and plea, and that in such case the trial may proceed and the verdict received notwithstanding his absence." 16 C. J. 817.

"But it has been repeatedly held upon careful consideration, while it is the right of the defendant indicted for felony to be present when the verdict is rendered as well as during the early part of the trial; and while it is irregular and improper to begin trial in such case without the presence of the accused, yet, if he is on bail and is present at the commencement of the trial, and afterwards voluntarily departs without leave, and is absent when the verdict is returned, he may be defaulted and verdict which will be binding upon him may be taken in his absence." Com. v. McCarthy, 163 Mass. 458, 40 N. E. 766.

"A defendant who voluntarily absents himself from his trial, whose

absence is not enforced, whose opportunity for attendance is not restricted, cannot be permitted to complain of the consequences of his own wrong." 2 Hyatt, Trials, 1054; 5 L.R.A. 832.

"Abuse of discretion which implies a plain and manifest error of judgment, lays a case open to review and reversal, under the settled rules applicable to review of discretionary matter. But in the absence of such abuse the appellate court seldom interferes with the disposition of a motion for a new trial, whether a motion was based upon alleged irregularities or improprieties of practice and conduct of the trial such as insufficiency of the evidence to sustain the verdict." 17 C. J. 248; State v. Howser, 12 N. D. 495, 98 N. W. 392.

"The jury is the sole judge of the facts in a criminal case; and where the testimony is such that reasonable minds may believe the charge alleged in the information has been proved, the verdict of the jury is conclusive as to its sufficiency." State v. Foster, 14 N. D. 561, 105 N. W. 938; State v. Mozinski, 49 N. D. 228, 191 N. W. 346; State v. Young, 55 N. D. 194, 212 N. W. 858.

BURR, J. The defendant was indicted by the grand jury on a charge of grand larceny and admitted to bail. On the trial in the district court on July 9, 1927 he was found guilty of the felony charged. Judgment was pronounced and sentence imposed on July 14, 1927 and the defendant made a motion for a new trial on the same day, which motion was denied. The defendant appeals from the judgment and from the order denying his motion for a new trial.

There are four specifications of error, being substantially the same as the grounds set forth in the motion for a new trial. The first specification alleges that the court erred in receiving the verdict in the absence of the defendant. The second is based on the refusal of the court to "grant defendant a new trial on the grounds of inadvertence, surprise and excusable neglect." The third and fourth are based on the allegation that the verdict is contrary to the law and that the evidence is not sufficient to justify the verdict.

With reference to the first specification of error, the record shows: that when defendant was held to answer to the district court he was admitted to bail and from then until now is out on bail; on the arraignment in district court he was present in person with his counsel and

entered a plea of not guilty; that he was present during the taking of testimony, after intermissions and recesses, when the trial was resumed, when the jury was charged, and when it retired for deliberation. The clerk's minutes and the record made by the presiding judge show the jury retired for deliberation about 1:30 P. M. on July 9, 1927 and about 2 P. M. on the same day announced they had arrived at a verdict. The defendant did not remain in the court room after the jury retired.

We quote the record:

"The jury in the above entitled action having arrived at a verdict at two o'clock P. M., and bailiffs and deputy sheriffs having been dispatched to find the defendant and after going all over the city of Stanley they were unable to locate him, and it being now nearly three o'clock, and it appearing to the court that the defendant has wilfully absented himself from the court, it is ordered that the jury return their verdict in the absence of the defendant."

The minutes of the clerk show the "jury returned at 2:40 o'clock P. M. and rendered a verdict of guilty which was read in open court with the defendant absent." Thus it is clear that when the court makes the record that the time was "now nearly 3 o'clock" and the clerk that it was 2:40 P. M. the court waited at least forty minutes while bailiffs and deputy sheriffs were searching for the defendant in Stanley. Shortly after the verdict was received, and while the jurymen were leaving the court room, the defendant strolled in. His excuse for absence was not stated at that time but is set up in an affidavit which he made on July 14, 1927 in support of his motion for a new trial. This affidavit states, with reference to his absence:

"That as soon as the case had been submitted to the jury and the jury retired to the jury room affiant left the court house and retired to a friend's residence, Mr. A. Hettletvedt in Stanley, N. Dak. for rest; that he returned to the court house in about an hour and met the jury that had tried him as he entered the said court house; that neither affiant, his attorney or anyone else was present in court in affiant's behalf at the time that the verdict was received; that affiant was anxious to and did desire to be present in the court at the time the verdict was received."

There is no claim on the part of the defendant nor is there anything in the record to indicate that the defendant left word with the court, the

sheriff, bailiff, or any other official, where he could be found or that any of them knew where he was. The record is also silent as to whether the court had adjourned for noon but defendant does not claim he went out to lunch. The time would indicate that the case was given to the jury after dinner. It is the claim of the defendant that his constitutional right to be present at the reception of the verdict was violated by the court and for this reason he should be granted a new trial. To emphasize his rights the defendant cites § 13 of article 1 of the Constitution of the state and §§ 10,709, 10,771, 10,877 of the Compiled Laws 1913. The constitutional provision says:

"In criminal prosecutions in any court whatever the party accused shall have the right to a speedy and public trial, . . . and to appear and defend in person and with counsel."

.He had a speedy trial. The indictment was found on the first day of June 1927. The next day it was presented and filed in open court. The defendant and his counsel entered into a written stipulation with the state on June 6, 1927 permitting him to appear for trial at the next regular or special term of the court and therein he agreed to then enter his plea and "that if said plea is 'not guilty' the defendant will be prepared to immediately go to trial upon said plea; that he will not demur to said indictment or file any application or motion for change of venue or continuance."

The next term was held in July of the same year. The defendant was arraigned, entered a plea of not guilty and on the 9th day of July the jury was impanelled, and the trial began forthwith. The case did not consume more than half a day and the verdict of guilty was returned the same afternoon. Sentence was pronounced July 14, 1927. The defendant had a public trial of which there is no complaint. He was present in person and with his counsel from the time the case was called until after the jury retired to deliberate.

Section 10,709 of the Code provides for the personal appearance of the defendant when arraigned on a felony. This requirement was met. Section 10,771 says:

"If the . . . indictment is for a felony the defendant *must* be personally present at the trial."

He was there with his counsel who examined witnesses, interposed ob-

56 N. Dak.—46.

jections and addressed the jury on behalf of the defendant. Section 10,877 says:

"If the . . . indictment is for a felony, the defendant must, before the verdict is received appear in person."

This is the right which defendant says was denied him. It is the contention of the defendant that this right is one which he cannot waive; that when the statute says "must" it means it is obligatory—a presence which the court must have, otherwise it is powerless to proceed.

This right to be present at the time the verdict is received is one peculiarly for the benefit of the defendant. If the defendant be in custody the court cannot proceed until he is produced, but must have him there that he may know the charge against him, take care of his own defense, confront the witnesses against him, and hear the testimony given. Neither the state nor the court can do anything to hinder the defendant from being present or to interfere with this right. Where the defendant gives bail and is at liberty he still has the right to demand that the trial on a charge which is a felony shall not proceed in his absence, but he has no right to create an absence so as to impede the trial. In other words the defendant cannot voluntarily absent himself and thus paralyze the work of the court. To hold with the defendant in his contention would offer an opportunity to every defendant out on bail in any felony case, by some contrivance of his own or trick or subterfuge, to absent himself and thus prevent the jury from announcing its verdict. The rule is set forth in 16 C. J. 817 and 8 R. C. L. 93. The latter authority says:

"If the defendant is on bail and is present at the commencement of the trial, and afterwards voluntarily departs without leave, and is absent when the verdict is returned, a verdict which will be binding on him may be taken in his absence, for by his own conduct he has waived his right to be present."

In this case it is not enough for defendant to say he was not present at the reception of the verdict; he must show that by some action of the court officials or at least by some power other than his own he was deprived of this right to be present. His affidavit in explanation of his action shows that it was voluntary. The array of authority cited in 8 R. C. L. 93 is sufficient, but we quote some language used in a few cases. The supreme court of Kansas says:

"The statutory provision that 'no person indicted or informed against for felony can be tried unless he be personally present during the trial,' is one that may be waived; and if while at liberty on bond he is voluntarily absent, without having been excused by the court, when the jury reaches an agreement, a verdict against him may lawfully be received in his absence." State v. Way, 76 Kan. 928, 14 L.R.A.(N.S.) 603, 93 Pac. 159.

The court says further:

"On all accounts, reasonable exertion should always be made to procure the attendance of the defendant; but it cannot be said that in the present instance no effort in that direction was omitted to which he was entitled as a matter of right."

The facts in this case are peculiarly similar to the facts in the case at bar. The jury retired at 5 P. M. and at about 6:45 P. M. announced they had agreed. "The defendant who was out upon bond was absent as were also his attorneys."

The bailiff called them and no one came. "They had not been excused from attendance and had left no word with the court as to where they could be found. The verdict was then received in their absence. The defendant in support of a motion for new trial, made an affidavit stating that in pursuance of the instructions of his attorneys he had held himself in readiness to be called, and to be present whenever the jury should return, and that he was within half a block of the courthouse when the verdict was received but did not hear the bailiff call him."

The court says:

"It is clear from this statement that the defendant was voluntarily absent from the court without permission, and thereby waived his right to be present when the verdict was received, if that right can ever be waived."

In the case at bar the facts are stronger against the defendant for a more extended search was made as the court sent bailiffs and deputy sheriffs through the town to look for him. In the case of Sahlinger v. People, 102 Ill. 241, the defendants were out on bail. The trial was concluded and instructions given during the absence of the appellant. On the motion for a new trial he presented the affidavit of a third party —not his own—showing that on the last day of the trial he was taken ill, but he himself gave no excuse "for leaving the court while the trial

was in progress nor does he give any reason for his absence." The court said:

"The question presented . . . is whether a defendant in a criminal case can stop the progress of a trial and thus defeat the ends of justice by deserting the court room during the last hours of the trial, or has the court the power to proceed . . . in the absence of the defendant."

After some discussion the court says:

"The constitutional right of a prisoner to appear and defend in person and by counsel, to demand the nature and cause of the accusation, to meet the witnesses face to face, was conferred for the protection and the benefit of one accused of a crime, but, like many other rights, no reason is perceived why it may not be waived by the prisoner. He may, if he sees proper waive any trial, and plead guilty to an indictment. If he may do this he may waive the right to cross examine a witness or to be present when his case is argued to the jury, or when the verdict is received."

True the decision does not show that Illinois had statutory provisions similar to §§ 19,771, and 10,877, but it does speak of "constitutional" rights. In the case of Frey v. Calhoun Circuit Judge, 107 Mich. 130, 64 N. W. 1047, a mandamus proceeding to compel the judge to enter judgment of acquittal in a criminal case, it appears the defendant was on bail and the jury came into court and rendered the verdict finding the defendant guilty, and was discharged. The defendant was absent but within a few minutes came into court. The jury afterwards was reassembled and again announced the verdict, but in the meantime had separated. The record goes into a lengthy discussion of such voluntary absence on the part of a defendant. The statute of Michigan in force at that time had a provision similar to our § 10,771 of the Code. It is a well settled rule that the trial includes the rendition of the verdict. The Supreme Court of Michigan said that the trial court had adjourned until the next morning and that the respondent "was justified in assuming that nothing would be done until that time; but he was bound to take notice of the hour at which the court convened, and his absence thereafter must be regarded as voluntary, and the court would be justified in treating it as a waiver of his right to be present."

The court then said that the first verdict was valid and it was unnecessary for the court to reconvene the jury. In Stoddard v. State, 132 Wis.

520, 112 N. W. 453, 13 Ann. Cas. 1211, we have a grand larceny case where the jury announced at 4:30 P. M. they had agreed upon a verdict. "Thereupon the court ordered the courthouse bell to be rung to notify counsel and plaintiff in error thereof, and directed deputies to find and notify them of the jury's agreement on a verdict, and to appear in court. After waiting about 30 minutes the court was informed by the officers that plaintiff in error could not be found, and so far as they had ascertained, he had gone out of the city to his father's house some two miles distant from the courthouse. He was at liberty on bail. The court then received the verdict in his absence."

His attorney was present and objected but the court said while the defendant could not be deprived of the right to be present at all stages of his trial, yet "in this case the facts show that plaintiff in error voluntarily absented himself from the court room and its immediate vicinity in such manner that he could not hear the usual call by bell announcing that the jury had agreed upon a verdict. The court's officers, after a reasonable search, were unable to find him to inform him that the jury were prepared to report the verdict they had agreed upon. In effect this conduct is a waiver of his right to be present, if he can in law so waive it."

Nothing is said in the case as to a statutory provision but in the reported brief his counsel argued plaintiff in error could not waive "his constitutional right to be present at the taking of every essential or important step throughout the trial."

An excellent presentation of the whole issue involving this view is found in Barton v. State, 67 Ga. 653, 44 Am. Rep. 743. The defendant was on bail and had made arrangements with a friend to remain in the court room and give him notice when the jury was ready to report. The deputy sheriff knew of this arrangement though not a party to it. This "friend" finding about 11 P. M. that the jury was still out concluded there would be a mistrial and went to bed. At 11 P. M. the jury announced readiness to report, but no one notified the defendant. The verdict was received in the absence of the defendant though his counsel was present. The court said:

"It was his duty and obligation in his bond, as well as his right, to be present until the close of his trial—the rendition of the verdict; being free it was for him to provide so as to be present. No advantage

was taken of him so far as the record discloses-the facts; he was called according to law, he failed to respond, and the court forfeited his recognizance and received the verdict. According to our judgment the ruling of the superior court (the trial court) that the verdict stand is right, and must be affirmed."

It is true the counsel was present, but if defendant could not waive the right then presence of his counsel would not save the state. This court in recent cases has held that a defendant, even where charged with murder, may waive constitutional rights of trial by jury, confrontation of witnesses, right to counsel, etc. State v. Layer, 48 N. D. 366, 379, 184 N. W. 666; State v. Throndson, 49 N. D. 348, 361, 191 N. W. 628.

These cases are merely a few from a multitude. The analysis of many of the cases cited by defendant shows situations where the defendant was not out on bail, therefore are not applicable. It would be a travesty on justice to allow the defendant by his voluntary conduct to control the deliberations of the court and say whether his trial should proceed or not. He has a constitutional right to bail, and to furnish bail whenever arrested. This gives him control of his own actions to a large extent. The trial court did all that could reasonably be expected, waited between 30 and 40 minutes in the hope the defendant would put in an appearance, scoured the town for him and otherwise showed consideration for his rights. There was nothing to indicate to the court that it might not have to wait 30 or 40 hours or days for the appearance of the defendant. The forfeiture of his bail would not help. We find no merit in this contention of the defendant.

The second specification is based on the claim the counsel who represented the defendant at the trial was so intoxicated that he could not present the case properly. It is needless to say that this counsel is not the counsel who represents the defendant in this court, and that the counsel here had nothing to do with the trial, having been employed after the conviction. Defendant says that because of this condition of his counsel there was such "inadvertence, surprise and excusable neglect" that the court should have granted a new trial. The only basis there is for this statement is his own affidavit made some 5 days after the trial wherein he says "that at the commencement of the trial and during the progress of same affiant verily believes that said

(counsel) was under the influence of intoxicating liquor." He then proceeds to state that the "counsel rested affiant's case without calling affiant or any one of his witnesses—that affiant requested that he be placed on the stand to give his testimony" and thus he would show that he did not steal the barley purported to have been stolen, and "at no time had same in his possession, and that he did not steal the same." This affidavit was presented to the trial court who summarily denied the motion for a new trial. The court was in position to know whether the counsel was drunk at the trial. Certainly we have a right to assume that if counsel for defendant charged with a felony was so drunk that he could not take care of defendant's defense properly, no court would have been so regardless of defendant's rights as to permit the trial to proceed. There is nothing in the transcript to indicate the counsel was intoxicated or unable to take care of the case. Objections to questions were interposed and were of such character as is usual in such cases. The cross examination of the state's witnesses was made by this counsel and the questions asked them were pertinent to the case. Some of the objections interposed by defendant's counsel were sustained, some were overruled, and the cold record which we have does not differ in this respect from other records. At the trial the very first act of defendant's counsel was to object to the taking of testimony in the case because the indictment did not sufficiently describe the property alleged to have been stolen. The indictment charged that the defendant did "take, steal and carry away certain property; to-wit, about 60 bushels of hulless barley of the value of $1 per bushel, etc." The counsel objected to the indefiniteness and uncertainty as shown by the use of the term "about" 60 bushel on the ground that "the word 'about' makes the indictment uncertain, does not tend to show specifically in a criminal case or with certainty that the crime is petit larceny or grand larceny. From that time on until the charge to the jury he appears to have conducted the case in the same manner as in other cases so far as the record discloses. There is nothing to indicate the defendant desired to change counsel, that he appealed to the court for delay to get other counsel, that he had any witnesses or wished to testify, nor does he set forth any testimony which he himself or any of his witnesses would have given. It was the same counsel who represented him in June when the stipulation was made and defendant

admits he knew before the trial commenced that his counsel drank intoxicating liquor and that he saw him drink that morning. No exceptions were taken to the charge of the court nor does the present counsel claim there was any error in the charge. It may be said it is so usual to except to some portion of the charge that a failure to take any exceptions is indicative of inattention to the rights of his client, but the present counsel does not claim the court misdirected the trial jury in any respect, and our examination of the charge does not disclose any misdirection. We see no prejudicial error. on the part of the court in refusing to grant a new trial on this ground.

The third specification deals with the character of the testimony adduced. "In a criminal case if there is any credible evidence which in any reasonable view supports the verdict it will not be disturbed on appeal." Lam Yee v. State, 132 Wis. 527, 112 N. W. 425. Such verdict is binding on the court. This is the rule adopted here. See State v. Cray, 31 N. D. 67, 153 N. W. 425; State v. Ugland, 48 N. D. 841, 187 N. W. 237. In the latter case we held:

"The finding of the jury is binding on this court when based upon substantial, competent evidence that, in any reasonable view thereof which the jury has a right to take, justifies the verdict."

See also State v. Wheeler, 38 N. D. 456, 464, 165 N. W. 574; and State v. Burcham, 44 N. D. 604, 176 N. W. 657.

It is not necessary to set forth all of the testimony. The state showed that Fred Anderson and Oscar Anderson had left something like 100 bushels of hulless barley in the granary on their homestead; that they saw this barley there on the 13th day of November, 1926, that on the 22nd of November they found that all but about 10 bushels had disappeared; they noticed truck tracks and described which way they came and which way they went; they followed the tracks and found drippings of hulless barley along the road tracing these to Van Hook over the railroad crossing and on to the dump of the Woodworth Elevator at that town. They produced on the trial a sample of the barley left in their granary, which they say was a fair sample; they asked the elevator agent about purchases and had him give them a sample of grain which the elevator agent said he purchased from the defendant. This sample turned out to be hulless barley with approximately the same peculiar kind of dockage and smut in it that the sample from the gran-

ary shows. Both samples were there before the jury for examination and the state showed the sample obtained at the elevator was from grain sold by the defendant on the 20th of November. It is true that the elevator agent at times gave uncertain, vague and apparently contradictory testimony wherein he appeared to state that he had bought the grain from the defendant for durum wheat. It had been put in the durum bin and he testified that the sample he gave was from the last load put in that bin and this was purchased from the defendant. It turned out to be hulless barley. A casual examination and comparison of the two samples produced is convincing they are both from the same stock, so similar is the kind, quality and quantity of the smutty particles, the foul seeds and other dross. The defendant did not testify nor produce any witnesses. There was sufficient testimony, which if believed by the jury, justified the verdict returned. The trial court was satisfied as to such sufficient testimony to justify the verdict, and we see no reason for holding otherwise. The judgment of conviction is affirmed.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.